Welcome back. Yes, good morning, Your Honors. I'm Jeffrey Baird. May it please the Court, I'm representing Barbara Boyd. The Court last year decided in Bruce v. Commissioner that new evidence that comes into the Appeals Council becomes part of the record as a whole for the evaluation of the sufficiency of the Commissioner's final decision. When the Appeals Council considers and incorporates and then declines review, the Court doesn't review that declining of review. But the ALJ's decision must stand in light of the new evidence. Stand in which ways? It's still got to survive substantial evidence review, and it has to survive legal error review. On legal error, of course, the Court can say, yes, but is it harmful? And that really will be the bread and butter of evaluating new evidence, because often it will come in from a treating source, from an examining source, from someone that needs specific or germane reasons to be rejected. The ALJ won't have done that, can't have done that, but the Court will be able to ask, is it harmful? Well, I guess what, suppose a claimant loses before the ALJ and the ALJ issues the decision. The claimant then retains an expert to rebut the ALJ's decision, submits it to the Appeals Council, and the Appeals Council denies review. Will we have to remand for the ALJ to consider the expert report? If so, couldn't any claimant obtain a remand by waiting until after the ALJ issues a decision and submit additional evidence? The Court would evaluate whether there's any harmful error. So, for example... Yes, I mean, what you've been arguing for the last couple of minutes, isn't that just a long way of saying that we still test the ALJ decision for substantial evidence? But in performing that test, we have to take into consideration the additional evidence that was submitted to the Appeals Council. In that sense, it may be a fiction, but we consider it a part of the record before the ALJ, right? That's the way to do it. It doesn't necessarily require a remand. No, you'd have to evaluate the harmfulness of the error. Well, no, first you have to see if there's error. Yeah, you'd have to see if there's error. But if the ALJ hasn't given specific and legitimate reasons or germane, okay, there's an error. The question is, but does it matter? Does it add up to very much? And in the Boyd case, the new evidence that was incorporated and considered by the Appeals Council does have important information that could change the outcome of the case. I think let me follow up before you get there with Judge Callahan's question. I think what she was getting at, which concerns me a little bit, and I understand we're bound by the Bruce case, but the scenario that faces counsel like you going forward, if you represent someone for the ALJ as opposed to after, you present evidence for ALJ, what is to preclude you from holding something back intentionally? And then, I mean, is abuse an issue that we need to think about? I'm not suggesting, Mr. Baird, that you did that in this case at all. I'm just looking more holistically at the process and the potential for abuse in holding back evidence and then presenting that to the Appeals Council. And then you put the judges on appeal or the district court judge in this Alice in Wonderland, I think. That's a phrase, yeah. It is an Alice in Wonderland phrase. Yeah, it's like you hold an arrow in your quiver, and if things don't go well at the first level, then you spring it out. It keeps your case alive a lot longer, that's for sure. Well, the evidence would have to be, you're right, there is a possibility of gamesmanship. But it seems to me there's ways that the Appeals Council can get rid of that, and there's ways that the court can. You can always evaluate, is the error harmful? Would it actually make any difference? And if the claimant's counsel is withholding, there's really nothing to stop the Appeals Council from just sending it back, not incorporating it into the record. No court's going to enforce that decision by the Appeals Council. But why can't people be on, you know, I mean, generally speaking, you're supposed to get one bite at the apple and not then later be able to say, well, that didn't work, so now I want to try something else. And here, I guess, what your additional evidence is, well, you put, you know, Dr. Way's report describes Mrs. Boyd's original fibromyalgia diagnosis. Dr. Carter's report discusses Mrs. Boyd's psychological limitations. Mr. Boyd's declaration reiterates his wife's allegations about her limitations, and Dr. Martin's report discusses Mrs. Boyd's physical capacity and limitations in the workplace, right? Right. Well, I can explain why the error would be harmful in the Appeals Council not granting review to give reasons or the ALJ not being able to give reasons, but the error would still be harmful. Dr. Carter observed the claimant needed to lie down during the examination. She also observed that the claimant deteriorated during the course of the examination and began having longer latency in her answers, which revealed memory and concentration problems. So when Dr. Carter gives those clinical findings and connects them with a long-term record review, it tends to give support to earlier testimony that the claimant gave about needing to lie down. It tends to give medical support so that the husband's not just parroting. The doctor saw it as well. She needs to lie down and take breaks. But you've got one sort of elephant in the room, and that is that Dr. Way's fibromyalgia assessment was made in 1995, right? True. And the record shows that Mrs. Boyd continued to work for nine years after this diagnosis. True. So how then does this diagnosis support your contention that the ALJ erred in finding Mrs. Boyd capable of employment? It deteriorated. It deteriorated after 2004. That was her testimony. That was her husband's testimony, and that's what Dr. Carter found as well. So it does inform the decision of the court in evaluating the commissioner's final decision. So the evidence is meaningful. It's not just gamesmanship. I think that would be the concern. Dr. Carter's exam of your client took place after the ALJ findings? True, about four months later. So, in other words, you looked at the ALJ findings. You saw weakness potentially in your case. You hire Dr. Carter, and then you get a favorable report. You take that to the Appeals Council. Right. I didn't do it, but the prior attorney did. Okay. And that's fair game. The conduct of these adjudications is really an inquiry. It's an extended inquiry, and the ALJ functions as an inquisitor, and even the Appeals Council functions as an inquisitor. And the Appeals Council often will take new evidence and pay a claim with the ALJ never having seen it because the process is really an inquiry, not a hard-fought adversarial adjudication where the record is really fashioned and fought for at the ALJ level. I mean, Dr. Carter did make some very significant findings of a GAF of, what, 45, as opposed to 58 and 65, which was previously presented to us. Suggest deterioration. And she connected it with record review. She saw those earlier psychological evaluations as well. Can I say immediately pay on this? I hope so, but it would certainly make sense to remand for an ALJ to consider that additional evidence because, again, the harmfulness of the sort of built-in error, the harmfulness is the key question. It's that Dr. Carter and Dr. Martin tend to support this need for breaks, this need to lie down, this deterioration during the course of efforts, and that's what makes it very important evidence. I also wanted to talk hyper-technically, perhaps to your annoyance, about the age category change. The claimant changed age category. She was younger, and then she became a person closely approaching advanced age. Under the regulations, the ALJ has to account for that in the body of the decision and has to account for that in questioning the vocational expert. The ALJ didn't in the body of the decision, mentions plaintiff was younger individual at the application date, cites only what's called a grid rule for a younger person, and in the course of hypothetical questioning asked the VE nothing about the age category change. Recently, this court, in an unpublished decision, OBORG said... The regulations say that, you know, when you take this transition in age, as of what date, in effect? It would be on her 50th birthday. No, no, no, I mean at what point in the process? The ALJ has to take account of it in fashioning the RFC, in asking hypothetical questions... What, as of the date of the hearing? No, it's at the time the application was made that she was like, what do you call it, a younger person in that category, right? Right. And then during this process, she transitioned into, I don't know, that transitional group. Right. And that can affect, as OBORG... So my question is, you know, when is the snapshot that the ALJ is supposed to use for age? At what point in time? Both. Both. The regulations say there's two sets of hypothetical questions to ask. Okay, when she's a younger individual, how does that affect these things? Okay, now she's aged up, does that affect the jobs you're locating for her or the ability to make adaptations to the world of work? And this court, in the OBORG decision, which was unpublished, had that exact age category error and considered it so important, although I had waived it, the court asserted it anyway. So it's an important additional error here. But wouldn't Rule 202-14 result in the same decision? Well, it's a question to put to a vocational expert. And in the OBORG case, it was the exact situation. The two grid rules resulted in a framework of not disabled. But the court felt it was very important for the ALJ to go through each age category, assessing RFC, asking hypothetical questions. That's certainly what the regulations specify. I'll reserve the rest of my time for about a minute. All right, thank you. Good morning. Good morning, Your Honors. Aloha. Good morning to the court clerk. I think we need to change that over. We've got the time change. Thank you. Brad Ekelberg, on behalf of the Commissioner of Social Security, Carolyn W. Colvin, appearing in front of Your Honors, to ask the court to affirm the Administrative Law Judge's decision in this case because it is based on substantial evidence, including the evidence that was before the Administrative Law Judge, as well as the new evidence which was submitted to the Appeals Council afterward. So how do we deal with the, what is it, the GAF? It was 68-58 at the time that the ALJ did it, and now we have a 45. So how do we look at that? Your Honor, Dr. Tung found that claimant had a GAF score of 58, which is a high-moderate GAF score. Dr. Esink, a psychiatrist, found, in addition to mild depression and a mild pain disorder, mild inattention problems, that Ms. Boyd had a GAF of 65, which indicates mild issues. As Commissioner articulated in her briefing, Dr. Carter, who submitted her report seven months, six to seven months after the ALJ decision was issued, and who conducted her evaluation four months after the decision was issued, despite the Administrative Law Judge keeping the record open for submission of more material, she found that Ms. Boyd had a GAF score of 45. Now what is absolutely imperative is the fact that Dr. Carter, in completing her diagnosis, and this is on page 440 in the record, Your Honors, she indicated in parentheses that that GAF score was current. And again, as the Commissioner outlined, citing the Diagnostic and Statistical Manual of Mental Disorders, that parenthetical limits the GAF score to the current state of Ms. Boyd. It is not retrospective, Your Honor. It does not look backward, despite Ms. Boyd's contention that the Court must infer. According to the Diagnostic and Statistical Manual of Mental Disorders, this is a current circumscribed assessment. Dr. Carter's other assessment of the – Let me stop you there and tie this together to see if I understand what you're stating. Under 404970B, that sets forth when the Appeals Council can consider evidence not admitted before the ALJ. It says the Appeals Council shall evaluate the entire record, including the new and material evidence submitted, if it relates to the period on or before the date of the administrative law judge decision. So is it your view by saying this GAF is current six months later, it does not fall within the scope of the evidence we may consider to determine if there is substantial evidence? The rest of Dr. Carter's analysis, perhaps, but not that GAF. That is correct, Your Honor. And then if we were looking, the correct analysis under the Bruce decision is to see when you consider the entire record, the evidence that was submitted and before the administrative law judge, as well as the new evidence, does the administrative law judge's decision remain supported by substantial evidence in consideration of everything? So just so, assuming most of us don't get better with time, particularly in this consensus, and people that have problems, physical problems or mental problems, a lot of times don't either. So their remedy, like for example, let's assume that she really has declined to a 45. Does she just have to start a new process? Is that her remedy? Because what you're saying is that says how she was after, and the only evidence that we're supposed to look at is how she was during the period of time that the ALJ was considering. But let's say she's on the skids and she just keeps getting worse. The fact that she was okay at some point doesn't prevent her from being disabled in the future, right? That is correct, Your Honor. One important reference point within this whole disability process is the date last insured. In this particular case, that date last insured is the end of December of 2009. So that does limit in terms of being eligible for benefits the time when an individual could be found disabled for the purposes of receiving benefits. The Appeals Council process does allow the individual to submit new evidence in order to help give them an opportunity to show that they are disabled. So there are opportunities for that to happen. But in this case, Dr. Carter's report is contradicted by the substantial evidence of an administrative law judge's decision. Just so I'm not sure I understood your answer in relation to the question. Let's say we affirm in this case, just hypothetically, when could Ms. Boyd go back and what could she do if she has, in fact, become more severely disabled in the last time since the ALJ decision or the Appeals Council decision? Are there time limits on when you can go back? I know there's this sort of semi-race judicata that applies. You have to show changed circumstances and so forth. Are there any time limitations, anything like that? Well, she could. She would not be denied the opportunity of filing another application. She could do that, and then we would follow the process with the considerations of race judicata. When you say new application, you mean for the same period? Well, you could. There's nothing that prohibits anyone from filing an application and referencing the original disability onset date, in this case, May of 2004. However, there is an administrative finality, and I think that is an issue in this particular case. I guess we're just looking for the person that let's assume that maybe they weren't quite there at the time when they had their hearing, but then they really have something degenerative, and then they're in really bad shape. How does that person get relief? They could apply for another application, and they would have to show evidence that shows that they were disabled prior to, in this case, which is a Title II case only, before, on or before the date last insured. Well, which could be a later onset date, though. That's correct, Your Honor. That could be revised. That is correct, and you usually see that many times the date after an administrative lodges decision, if that's become final. So there is an opportunity, Your Honor. There is options. The Commissioner would like to speak briefly, again, that the court does not first look to find error when they're looking at the new evidence. There is no error involved because the administrative lodges has never seen this evidence. The question is, is the decision still supported by substantial evidence? Your Honor asked the question about should we be concerned about the potential for abuse, and to echo the Honorable Magistrate Judge Suchida, who ruled at the district court level on a report and recommendation, the answer is yes. The Commissioner is not saying that there were abuses in this case, but that is a very concerning question. And the issue in this particular case, you can see it working. The ALJ at the end of the hearing in August. Well, you know, but if that's an issue, I mean, that's a matter for the Commissioner, isn't it? Because that's part of the Commissioner's own regulations that set up these appeals council and, you know, have permit new evidence, right? It's not something I don't think we should be particularly concerned about, is it? Well, the question would be if you have a complaint on that,  or to whatever your, you know, your table of organization is, but there's somebody there that, right, oversees these regulations. Well, Congress would be one entity, certainly, that would be empowered to change the statutes, change the language. No, but who, you know, promulgated the provision that allows new evidence to be presented to the appeals council? The Commissioner. The Commissioner, right. So the Commissioner says this is the right way to do it. So I don't think you should be saying, well, you know, I don't think it's a very good regulation because you can, you know, promote fraud. I mean, right? I assume that was brought before the Commissioner. And Your Honor's point is well taken, Your Honor. The Commissioner does have the power to make regulations pursuant to Congressional authority. But to speak to this. Well, let me ask you this, since we have some other things we want to cover. Why isn't the ALJ's failure to account for the changes in Mrs. Boyd's age reversible error? It's not reversible error, Your Honor, because she is not disabled under the so-called grids if you change and transition her age category from a younger individual to an individual closely approaching advanced age. Under the grid rules that His Honor, Judge Seabright quoted 202.21. All right. Did the ALJ do both ages? Yes, Your Honor. The ALJ and the vocational expert were fully aware of Mrs. Boyd's age when the vocational expert testified about the jobs that she was capable of performing. So are you saying what the appellant's counsel said is just wrong? Because he said that there was only a determination as to the age at the time of the filing. And then she got past 50 or whatever. So are you saying what he says is wrong? Your Honor, what the Commissioner is saying is that the vocational expert The Commissioner is saying that the vocational expert was apprised of the age of Mrs. Boyd. Okay. But were hypotheticals on both of those? Was it analyzed under both grids? Not specifically analyzed under both grids, no. They did not go through the grids. The ALJ Just the earlier age. Just the earlier age. However, even if it were reviewed under the grids for a person closely approaching advanced age, the person would still be found not disabled. The solution or the information that the vocational expert would that the administrative law judge would require, if there was a concern, was to seek testimony by a vocational expert if there was some concern about the ability to do jobs. In this case, the vocational expert testified. Ms. Boyd's argument about this point is speculative. And it would have been resolved with what the administrative law judge did already, which is get testimony from a vocational expert who was conscious of Ms. Boyd's age and who factored that into the equation in his analysis on pages 49 through 52. Let me ask you this. Pages what, 49 what? 49 through 52 of the record. And you're saying those pages make clear that the petitioners, we'll call it advanced age, was before the V.E.? The V.E. knew about that? Absolutely. And if Your Honor were to look at page 80 as well, you'll see that the initial notice to the vocational expert laid out as one of the chief pieces of evidence to the vocational expert, Ms. Boyd's age. But 51, pages 51 through 52, will show Your Honors that age was a consideration and that the V.E. was apprised of this as a key piece of information on page 80. But the hypothetical questions asked were on the earlier age, not the later age, correct? Well, it would encompass her age as an entirety. There was not a breakdown about the categories of younger individual and an individual closely approaching advanced age. But this error would be, if we're under a harmless error standard, this would be a harmless error because it would be inconsequential to the decision. Well, let me ask you this, and probably a question you don't want to hear. But if someone were to view this record overall before the ALJ, it's pretty much a close call. And if that's all the evidence was, the deference would certainly suggest you would uphold the finding. But if it's sort of a close call to start with, and then you have this Carter report, and then you have this grid issue, what's the harm from your standpoint in just remanding back to the ALJ? Your Honor, the harm in remanding back to the ALJ speaks to the questions that Her Honor raised at the outset, which is could not a claimant, any claimant, obtain a remand by virtue of submitting additional evidence after the ALJ makes his or her decision. That is an inherent problem. But there's no law. We may not like that, but then on the other hand, there's no law that says anything other than that's how we treat this, right, under binding precedent. We're supposed to look at all of the evidence and then engage in this Alice in Wonderland review, asking whether or not there remains substantial evidence. Well, Your Honor, the Commissioner would say that it's not so much Alice in Wonderland as much as it's just your standard substantial evidence review. And in this particular case, case law speaks to when a remand would be justified. But we give deference to a finding that was never made. That's what makes it so difficult. How do you give deference to something that isn't before you? That's the Alice in Wonderland part of it. Well, the issue on that remark would be looking at the findings and the facts as administrative, meaningful administrative review or meaningful review of an administrative decision requires access to the facts and the reasons supporting the decision that's at question. And in this case, the Court has those facts, and it has those reasons articulated in the administrative law judge's decision. Bruce and Ramirez, for instance, have said that if you have a piece of medical evidence that's submitted after the fact that's uncontradicted, that would be a situation where a remand is possibly justified, depending upon the record as a whole. All right, sure, over your time. So if the panel members have additional questions, I want them to feel free to ask them. But otherwise, we've used your time. All right. Thank you, Your Honors. Thank you. Thank you, Your Honors. Regarding gamesmanship, again, the Appeals Council allows new evidence to be presented, and the rule is that that's used to assess the sufficiency of the ALJ's decision. The substantial evidence standard includes within it harmful legal error anyway, so the Ramirez case did talk about legal error. It's the same analysis to see if the new evidence presented would actually work. Well, why don't you respond to the fact that HER-45 is based at that time as opposed to based on the time period that the ALJ was considering? Well, Dr. Carter wrote roughly three months after the ALJ's decision. GAF scores are a marker, like a report card, of where you're at at a particular time. They're not evanescent, but they don't last for long times. The important thing about Dr. Carter is that she connected her particular findings or observations of the need to lie down and so forth with earlier records as well. So she put her value of her evidence across the period at issue. So she made findings three or four months later, but also connected them with the record review to get a pattern of what this person is like. That doesn't really answer the question, though. The question was specific to the GAF score. Is that GAF really out of the picture for us? No. Because it's current as of, meaning post-ALJ decision, and the regulation suggests it has to relate to the period on or before the date of that decision. Is a GAF issued four months late? It's a GAF finding four months late. Would that be outside the evanescence of a GAF? Dr. Carter didn't think so. That is, she didn't say it's retroactive. So there is merit to that argument by the government. So I guess the value, it doesn't get in the same, the 65 to 58, but what you could argue is that you wouldn't go down to a 45 that quickly, so it had to. . . Right. So maybe it was lower than the 58 or the 65. Dr. Carter suggests that as she shows the deterioration, and she reviews carefully all the records and connects them with her firsthand observations. So she's provided a nice explanation spanning the period at issue, and she has sort of an Olympian view on all the prior records, but the addition of personal firsthand interaction, and in particular observing the deterioration during the course of a typical exam. On gamesmanship, there's a really horrible way the courts can prevent it and the agency can prevent it. I see no reason to think it will happen, but if it did, deny attorney's fees. If an attorney is obviously playing games, but either the agency or the court is stuck sending it back to the ALJ, you can deny attorney's fees. That's discretionary choice, and that would be a very valid reason to say, okay, your client's getting another chance, but you're not getting paid. And the agency has that very strong discretionary authority with what's called 406A to reduce fees, or the court can do EJA, equal access to justice, and say, hey, you're not playing fair. We're going to reduce that on grounds of gamesmanship. Manifest injustice in your actions of the attorney. So you would prevail but not get attorney's fees? That's a horrible thought, but you could do that and prevent gamesmanship. If you saw gamesmanship, that would be a fail-safe to make it stop in future cases. All right. Let's see. The other thing is Social Security Ruling 111P actually prevents the claimant from filing a new application until the administrative processes are done. That is, they can't file a new application until the appeals counsel has weighed in. That being so, there's all the more reason to present evidence to the appeals counsel because you can't file another application. All right. Thank you for your argument. Your time has expired. This matter will stand submitted.
judges: Seabright, Tashima, Callahan